IN THE MATTER OF RYMAN

Docket No. 56132. Argued June 5, 1975 (Calendar No. 14).—Decided
August 20, 1975.

The Judicial Tenure Commission complained against Frank H.
Ryman, Judge of the 77th Judicial District, charging miscon-
duct in office and conduct clearly prejudicial to the administra-
tion of justice. The master hearing the complaint found that
the respondent committed acts prior to the time he took office
which were of such a nature as to warrant the conclusion that
he is unfit to hold judicial office, that he continued in the
practice of law after taking judicial office, that he caused a
deputy clerk of his court to perform the duties of magistrate
without compliance with the statutory requirements for the
appointment of magistrates, that he gave false testimony in a
number of instances concerning his practice of law after becom-
ing a judge, and that his conduct demonstrated a casual indif-
ference to the law which renders him unfit for judicial office.
The Judicial Tenure Commission unanimously approved the
report of the master in all respects and recommended that the
respondent be removed from office. Respondent appeals. *Held:*

1. Under Const 1963, art 6, § 30(2), the Supreme Court, on
recommendation of the commission, may remove a judge for
misconduct in office or conduct that is clearly prejudicial to the
administration of justice.

2. Acts committed prior to the time respondent assumed
judicial office were properly considered by the commission.

3. False testimony given by the respondent in this proceed-
ing, after he became a judicial officer, constituted "conduct that
is clearly prejudicial to the administration of justice".

4. An order shall enter removing respondent from office. No
motion for rehearing of this matter will be entertained and the
decision is final.

REFERENCES FOR POINTS IN HEADNOTES

[1, 6, 10–13, 15] 46 Am Jur 2d, Judges § 50.
[2, 3, 5, 7–9, 14, 16] 46 Am Jur 2d, Judges §§ 18, 79.
[4] 46 Am Jur 2d, Judges § 170.
[17] 25 Am Jur 2d, Elections §§ 41, 44, 45.

Levin, J., joined by T. G. Kavanagh, C. J., would impose suspension rather than removal from office for the following reasons:

1. Ordinarily a judge should not be removed from office for non-criminal conduct unconnected with performance of his judicial duties; removal should be reserved for conviction of a felony, misconduct in office, or demonstrated inability to perform judicial duties. Backdating and improper signing of deeds by respondent before he assumed the office of district judge is not conduct warranting removal from office but it justifies a 15-month suspension from office without pay.

2. Respondent cannot properly be disciplined for testifying falsely before the State Bar Grievance Board and the master where he was not charged in the formal complaint of the Judicial Tenure Commission with perjury or false swearing.

3. A judge may not continue in the ongoing practice of law, but neither statutes nor the Code of Judicial Conduct preclude a lawyer who has become a judge from winding up his practice.

4. A body charged with investigation and discipline of elected officials should not impose discipline based upon a charge of election law violation for which a prosecution could not be maintained because the statute of limitations has run.

### OPINION OF THE COURT

1. JUDGES—REMOVAL—JUDICIAL TENURE COMMISSION—FINDINGS— PRACTICE OF LAW.

The Judicial Tenure Commission's findings and recommendation that a district judge be removed from office are adopted by the Supreme Court and the judge is removed from office where he committed acts prior to the time he took office which were of such a nature as to warrant the conclusion that he is unfit to hold judicial office, that he continued in the practice of law after taking judicial office, caused a deputy clerk of his court to perform the duties of magistrate without compliance with the statutory requirements for the appointment of magistrates, gave false testimony in a number of instances in testifying as to the facts of his practice of law after taking office, and his conduct demonstrates a casual indifference to the law which renders him unfit for judicial office.

2. JUDGES—REMOVAL—CONSTITUTIONAL LAW.

Under the state constitution, the Supreme Court, on recommendation of the Judicial Tenure Commission, may remove a judge for misconduct in office or conduct that is clearly prejudicial to the administration of justice (Const 1963, art 6, § 30[2]).

3. JUDGES—REMOVAL—JUDICIAL TENURE COMMISSION—PRIOR ACTS.

The Judicial Tenure Commission may consider acts committed prior to the time a judge assumed judicial office in a proceeding to remove him from office.

4. JUDGES—REMOVAL—CLEARLY PREJUDICIAL CONDUCT—FALSE TESTIMONY.

False testimony given by a judge in proceedings for his removal from office constitutes "conduct that is clearly prejudicial to the administration of justice" (Const 1963, art 6, § 30[2]).

### DISSENTING OPINION

T. G. KAVANAGH, C. J. and LEVIN, J.

5. JUDGES—MISCONDUCT—DISCIPLINE—CONSTITUTIONAL LAW.

*Misconduct, although unrelated to the performance of judicial duties, and even if occurring before the lawyer becomes a judge, may be conduct that is clearly prejudicial to the administration of justice within the meaning of the state Constitution, justifying imposition of discipline by the Supreme Court (Const 1963, art 6, § 30).*

6. JUDGES—DISCIPLINE—STATE BAR GRIEVANCE BOARD—FINDINGS—UNPROFESSIONAL CONDUCT.

*Neither the Judicial Tenure Commission nor the Supreme Court may impose discipline based on a State Bar Grievance Board finding of unprofessional conduct but the same acts of misconduct which form the basis of such a finding may justify a charge and recommendation by the commission and imposition of discipline by the Court.*

7. JUDGES—REMOVAL FROM OFFICE—NON-CRIMINAL CONDUCT—FELONY.

*Ordinarily a judge should not be removed from office for non-criminal conduct unconnected with the performance of his judicial duties; removal, the most severe sanction, should be reserved for conviction of a felony, misconduct in office or demonstrated inability to perform judicial duties.*

8. JUDGES—MISCONDUCT—BACKDATING DEEDS—REMOVAL FROM OFFICE.

*Backdating and improper signing of deeds by an attorney before he assumed the office of district judge is not conduct warranting his removal from office as a judge, but is conduct of a kind clearly prejudicial to the administration of justice, and justifies disciplinary action of suspension from office without pay.*

9. JUDGES—DISCIPLINE—FALSE TESTIMONY—COMPLAINT.

*A district judge cannot properly be disciplined for testifying falsely before the State Bar Grievance Board and a master appointed by the Judicial Tenure Commission where he was not charged in the formal complaint of the commission with perjury or false swearing.*

10. JUDGES—MISCONDUCT—PRACTICE OF LAW.

*A district judge's continued practice of law after taking judicial office was not related to the performance of judicial duties and, therefore, was not misconduct in office.*

11. JUDGES—PRACTICE OF LAW—DISTRICT COURT ACT.

*While the district court act would appear on its face to prohibit any and all practice of law by district judges without regard to the receipt of compensation or court appearance, the Legislature did not intend the proscription for district judges to be stricter than that for other judges (MCL 600.207, 600.307, 600.562, 600.8203).*

12. JUDGES—WINDING UP PRACTICE—PRACTICE OF LAW—QUESTION OF FACT.

*Whether a judge is continuing or merely winding up the practice of law is a question of fact.*

13. JUDGES—PRACTICE OF LAW—WINDING UP PRACTICE.

*Neither the statutes nor the Code of Judicial Conduct preclude a lawyer who has become a judge from discharging in a reasonable manner his responsibility to his clients to complete the tasks entrusted to his care; he should, wherever feasible, transfer open files to another lawyer for completion and except, possibly, in extraordinary circumstances he should not be compensated for winding up services after the date he assumes judicial office, he should not appear in court and should not engage in negotiations with lawyers who may appear before him or undertake any task which might enable him to take advantage of or exploit his office, and winding up should be completed diligently.*

14. JUDGES—DISCIPLINE—FINDINGS BY MASTER—CONSTITUTIONAL LAW.

*A master's findings of fact and conclusions of law are not binding on the Judicial Tenure Commission or the Supreme Court; the ultimate responsibility for imposition of discipline on a judge rests under the state Constitution with the Supreme Court (Const 1963, art 6, § 30).*

15. JUDGES—WINDING UP PRACTICE.

> *A lawyer, a sole practitioner, who, after being elected a district judge in November, communicated with several lawyers regarding completion of 75 to 100 open files and turned over the bulk of the files by the following June or July, accepted no new clients and employed secretaries in his office only to "clean up the files", did not appear in court, and did not receive compensation for legal services except for a check for $10 which was accepted by a secretary in payment for preparation of a deed and deposited in his account was not continuing the ongoing practice of law, but rather was engaged in an effort to wind up his law practice by completing the tasks entrusted to him when he was a practicing lawyer.*

16. JUDGES—DISCIPLINE—INADVERTENT ERROR.

> *It is not appropriate to discipline a district judge for an inadvertent, isolated error as permitting a deputy clerk to act as a magistrate of the court without lawful appointment.*

17. OFFICERS—DISCIPLINE—ELECTION LAW VIOLATIONS—LIMITATION OF ACTIONS.

> *It would subvert the purpose of the one-year limitation on prosecution for violations of the election law, which is quickly to put to rest charges based on violation of the law, to allow a body charged with investigation and discipline of elected officials to impose discipline based upon a charge of election law violation for which no prosecution could be maintained because the year had run (MCL 168.942).*

*Dennis M. LaBelle,* for the Judicial Tenure Commission.

*Frank H. Ryman, in propria persona.*

L. B. LINDEMER, J. The respondent was elected to the position of District Judge, 77th Judicial District, for a term commencing January 1, 1973. The Judicial Tenure Commission filed Formal Com-

plaint No. 12 against him on July 22, 1974.[1] After service and receipt of respondent's answer, the Honorable William R. Peterson, Circuit Judge, was appointed master for the hearing on the complaint, which hearing was held on October 7 and 8. The master's report was filed November 21. After objections to the report of the master were filed by respondent, oral argument was had before the commission on February 3, 1975. The commission unanimously approved the report of the master in all respects and recommended that the respondent be removed from office. With that recommendation we agree.

Under the provisions of Const 1963, art 6, § 30(2), the Supreme Court, on recommendation of the commission, may remove a judge for misconduct in office or conduct that is clearly prejudicial to the administration of justice. In recommending removal, the commission stated in part:

"From these findings it appears clear that respondent committed acts prior to the time he took office as district judge which were of such nature as to warrant the conclusion that he is unfit to hold judicial office."

The commission did not err in considering these acts committed prior to the time respondent assumed judicial office. *State Bar Grievance Administrator v Moes,* 389 Mich 258; 205 NW2d 428 (1973), and *In re Kapcia,* 389 Mich 306; 205 NW2d 436 (1973).

As to misconduct in office, it is a finding of fact

---

[1] Judge Ryman was also the subject of action for professional misconduct before the State Bar Grievance Board. In the case of *State Bar Grievance Administrator v Ryman,* 394 Mich 167; 229 NW2d 311 (1975), this Court upheld a State Bar Grievance Board decision to suspend Judge Ryman from the practice of law for a 15-month period. This suspension was based solely upon the respondent judge's conduct *prior* to his assumption of judicial office.

by the master that respondent continued in the practice of law after taking judicial office and that respondent caused a deputy clerk of his court to perform the duties of magistrate without compliance with the statutory requirements for the appointment of magistrates.

The master further found that the respondent gave false testimony in a number of instances in testifying before the master as to the facts related to his practice of law after ascending the bench. On that point the commission says:

> "In any event, respondent's false testimony before the master and the State Bar Grievance Board was committed after respondent became a judicial officer and constituted 'conduct that is clearly prejudicial to the administration of justice.'"

The commission further says:

> "We particularly accept the master's conclusion in which he states:
> "'It is the master's conclusion that the respondent's conduct demonstrated a casual, even arrogant, indifference to the law, which renders him unfit for judicial office and, which conduct and attitude being known to the public, can only hold the courts in disrespect and impair the apparent integrity of judicial institutions and officers. As such, his conduct has been "clearly prejudicial to the administration of justice."'
> "Under the facts herein demonstrated it is our unanimous conclusion and recommendation the respondent be removed from office as district judge."[2]

An order shall enter removing respondent from office. Pursuant to the provisions of GCR 1963, 932.26 this Court hereby directs that no motion for

[2] Decision of Michigan Judicial Tenure Commission, February 18, 1975.

rehearing of this matter will be entertained and that this decision is final.

No costs, a public question being involved.

Williams, M. S. Coleman, and J. W. Fitzgerald, JJ., concurred with Lindemer, J.

Levin, J. The Judicial Tenure Commission has recommended that District Judge Frank H. Ryman be removed from office for "conduct that is clearly prejudicial to the administration of justice" and "misconduct in office".

On such a recommendation, this Court "may censure, suspend with or without salary, retire or remove a judge". Const 1963, art 6, § 30.

We agree that Judge Ryman's conduct warrants disciplinary action but would decline the recommendation of the Tenure Commission and, in lieu of removal, would suspend Judge Ryman from office without pay for 15 months.

I

The formal complaint, alleging acts of misconduct before and during Ryman's tenure as a judge, was filed after the filing of charges against him by the State Bar Grievance Administrator. The grievance charges concerned conduct before Ryman became a judge. This Court affirmed an order of the State Bar Grievance Board suspending Ryman from the practice of law for 15 months. *State Bar Grievance Administrator v Ryman,* 394 Mich 167; 229 NW2d 311 (1975).

Misconduct, although unrelated to the performance of judicial duties, and even if occurring before the lawyer becomes a judge, may be "conduct that is clearly prejudicial to the administration of justice" within the meaning of Const 1963, art 6, § 30.

While neither the Tenure Commission nor this Court may impose discipline based on a Grievance Board finding of unprofessional conduct, the same acts of misconduct which form the basis of such a finding may justify a Tenure Commission charge and recommendation and imposition of discipline by this Court. *In re Kapcia,* 389 Mich 306, 315; 205 NW2d 436 (1973); *State Bar Grievance Administrator v Moes,* 389 Mich 258, 263; 205 NW2d 428 (1973).

## II

The Tenure Commission approved the findings of fact and conclusions of law of the master "in all respects".

The Tenure Commission's decision refers to three specific acts of misconduct: (i) backdating and improper signing of deeds, (ii) false testimony and (iii) continuance of the practice of law after assumption of judicial office.

First, the Tenure Commission adopted the master's finding that Ryman backdated and signed the name of a deceased client to five deeds; the deeds purported to make title joint between the client and her daughter.

Ryman contended that he signed the deeds before his client's death and that he often signed papers for her with permission and pursuant to a power of attorney which he was unable to find.

Whether or not Ryman had a properly executed power of attorney is of no consequence. He did not sign as attorney in fact, but affixed a facsimile of his client's signature.

In *State Bar v Ryman, supra,* this Court found ample support in the record for the conclusion of the State Bar Grievance Board that Ryman had

backdated and signed his client's name to the deeds after her death. On further review—this time of the record made before the Tenure Commission—we reach the same conclusion. Any power of attorney would have terminated when the client died.

For this clearly unprofessional conduct, the State Bar Grievance Board suspended Ryman from the practice of law for 15 months with an effective date of May 27, 1975. In affirming the Grievance Board we indicated our agreement regarding the severity of the sanction appropriate for such misconduct.

The consequence of backdating and improper signing of the deeds may have been avoidance of probate and the collection of inheritance and estate taxes. It has not been shown that this was Ryman's purpose. It is not asserted that Ryman himself profited from this action or that the creditors or heirs of the estate were disadvantaged. It appears the property would nevertheless have gone to the client's daughter.

That act of misconduct occurred before Ryman became a judge and, while it supports disciplinary action, does not justify removal from office. Ordinarily a judge should not be removed from office for non-criminal conduct unconnected with the performance of his judicial duties. Removal, the most severe sanction, should ordinarily be reserved for conviction of a felony, misconduct in office or demonstrated inability to perform judicial duties.

Accordingly, we are of the opinion that backdating and improper signing of the deeds is not conduct warranting removal from office.

### III

Second, the Tenure Commission specifically

found that after Ryman became a judge he testified falsely before the State Bar Grievance Board and the master.

Ryman was not charged in the formal complaint of the Tenure Commission with perjury or false swearing, and, therefore, he cannot properly be disciplined on that account.[1]

In *People v Anderson,* 391 Mich 419, 423; 216 NW2d 780 (1974), this Court cited with approval *Scott v United States,* 135 US App DC 377; 419 F2d 264 (1969), "wherein the United States Court of Appeals for the District of Columbia Circuit rejected the argument that a judge may impose additional punishment because he believes the defendant committed perjury, saying that if the government wishes to prosecute for the independent substantive offense of perjury it may do so and that in such a proceeding the defendant would be entitled to all the protections of a criminal trial. Similarly, see *People v White,* 130 Ill App 2d 775; 267 NE2d 129 (1971)."

## IV

Third, the Tenure Commission found that Ryman "continued to practice law in material respects after taking judicial office contrary to clear statutory prohibition" and that such practice of law was "misconduct in office".

While the charged conduct occurred after Ryman was elected and assumed judicial office, it was not related to the performance of judicial duties

---

[1] Similarly, *see State Bar Grievance Administrator v Jackson,* 390 Mich 147, 155; 211 NW2d 38 (1973), where this Court held that a lawyer "may only be found guilty of misconduct as charged in the complaint. *See, In Re Ruffalo,* 390 US 544; 88 S Ct 1222; 20 L Ed 2d 117 (1968)."

and, therefore, was not "misconduct *in* office". (Emphasis supplied.)

Ryman did continue to maintain an office and furnish legal services to former clients after he assumed office. This literally violated the district court act which provides: "Upon taking office, a district judge shall not engage in the practice of law other than as a judge". MCLA 600.8203; MSA 27A.8203.

The corresponding statutory provisions applicable to Supreme Court Justices, Judges of the Court of Appeals and judges of the circuit court are in terms less sweeping as they prohibit only "practice as attorneys or counselors in any court of the state" and "the practice of law for compensation".[2] Canon 5 of the recently adopted Michigan Code of Judicial Conduct similarly provides: "F. Practice of Law. A judge should not practice law for compensation except as otherwise provided by law."

It is agreed that Ryman did not appear in any court and there is no finding, and it is not asserted there is any evidence, that after he became a judge he received compensation for legal services other than a check for $10 which was accepted by his secretary and deposited to his account in payment for preparation of a deed.

While the district court act would appear on its face to prohibit any and all practice of law by district judges without regard to receipt of com-

_____

[2] "The supreme court justices shall not practice as attorneys or counselors in any court of the state, nor shall they engage in the practice of law for compensation." MCLA 600.207; MSA 27A.207.

"The judges of the court of appeals shall not practice as attorneys or counselors in any court of the state, nor shall they engage in the practice of law for compensation." MCLA 600.307; MSA 27A.307.

"The circuit court judges shall not practice as attorneys or counselors in any court of the state, nor shall they engage in the practice of law for compensation. No circuit judge may have any law partner practicing in the circuit of which he is a judge." MCLA 600.562; MSA 27A.562.

pensation or court appearance, we are persuaded that the Legislature did not intend the proscription for district judges to be stricter than that applicable to the judges and justices of higher courts.

That proscription seeks to preclude a judge from engaging in the on-going practice of law. A judge continuing the practice of law might devote less than his full energy to judicial duties and might be tempted to take or be seen as taking unfair advantage of his office.

While all would agree that judges may not continue the on-going practice of law, neither the statute nor the code addresses the problem of winding up a practice faced by lawyers—especially sole practitioners—who become judges.

Ryman was elected a district judge in November, 1972. He practiced alone in Big Rapids. He testified that he communicated with several lawyers regarding completion of 75–100 open files. The bulk of the files were turned over by June or July, 1973. He said he accepted no new clients and that the secretaries in his employ after he took office were only "cleaning up the files".

Whether a judge is continuing or merely winding up the practice of law is a question of fact.

A lawyer practicing in a firm will generally be able to turn his work over to his colleagues and avoid participation in the closing of his files except perhaps as a consultant where his advice is necessary or as a participant in conferences where there is a special relationship between him and a particular client.

It may not, however, be economically feasible for a sole practitioner to turn all open files over to another lawyer for completion. He may, for example, have been paid in advance for the work and it

might impose an undue financial burden to require him to hire another lawyer to complete it. The task to be performed may be relatively simple and not justify searching out another lawyer and familiarizing him with the matter.

Neither the statutes nor the code preclude a lawyer who has become a judge from discharging in a reasonable manner his responsibility to his clients to complete the tasks entrusted to his care. The lawyer-judge should, wherever feasible, transfer open files to another lawyer for completion. Except, possibly, in extraordinary circumstances he should not be compensated for winding up services after the date he assumes judicial office. He should not appear in court and should not engage in negotiations with lawyers who may appear before him or undertake any task which might enable him to take advantage of or exploit his office. Winding up should be completed diligently.

We appreciate that in many cases the distinction between continuing the on-going practice of law and a good faith effort to wind up a law practice will be a fine one. Resolution of this issue requires a reasoned exercise of the collective judgment of this Court.

The master's findings of fact and conclusions of law are not binding on the commission or us. The ultimate responsibility for imposition of discipline on a judge rests under the Constitution with this Court.[3]

---

[3] "(2) On recommendation of the judicial tenure commission, the supreme court may censure, suspend with or without salary, retire or remove a judge for conviction of a felony, physical or mental disability which prevents the performance of judicial duties, misconduct in office, persistent failure to perform his duties, habitual intemperance or conduct that is clearly prejudicial to the administration of justice. The supreme court shall make rules implementing this section and providing for confidentiality and privilege of proceedings." Const 1963, art 6, § 30.

"The Supreme Court shall review the record of the proceedings on the law *and facts* and shall file a written opinion and judgment directing censure, removal, retirement, suspension, or other disciplinary action as it finds *just and proper,* or rejects and modify, in whole or in part, the recommendations of the commission." (Emphasis supplied.) GCR 1963, 932.25.

On review of the record, we conclude that Ryman did not continue the on-going practice of law, but rather was engaged in an effort to wind up his law practice by completing the tasks entrusted to him when he was a practicing lawyer.

## V

The commission additionally charged that Ryman instructed and permitted a deputy clerk to act as a magistrate of the court without lawful appointment and that the person appointed failed to take the constitutional oath of office and file a bond with the county treasurer, contrary to MCLA 600.8501–600.8507; MSA 27A.8501–27A.8507.

The master concluded that these charges were established and that such conduct *might* constitute misconduct in office or conduct prejudicial to the administration of justice, but neither the master nor the commission predicated any recommendation on that account.

There is no evidence that Ryman deliberately violated the statute or that he appointed a person without appropriate qualifications. Ryman apparently failed to read the statute carefully and erred in his interpretation of the requirements for making the appointment. His mistake in this regard was not egregious. We agree with the apparent conclusion of the master and the commission that it is not appropriate to discipline a judge for inadvertent, isolated error.

VI

The master found that Ryman filed a false report of campaign contributions, in violation of the Michigan Election Law.[4]

Ryman reported that he received no contributions. In his defense he stated that he returned most of the contributions he received and gave the balance to a non-partisan political organization. In short, he did not report receipt of the contributions because he did not use them for election purposes.

The one-year limitation on prosecution for violation of the election law had run before the filing of the Tenure Commission's complaint.[5]

The purpose of this short period of limitation is to quickly put to rest charges based on violation of the election law. The Legislature recognized the public interest in speedy disposition of such charges. It would subvert that purpose to allow a body charged with investigation and discipline of elected officials to impose discipline based upon a charge of election law violation for which no prosecution could be maintained.

VII

The master concluded that Ryman's conduct

---

[4] The Michigan Election Law provided:

"Every candidate shall * * * prepare and file * * * a full, true and detailed account and statement subscribed and sworn to by him * * * setting forth *each and every sum* of money *received* or disbursed by him for nomination or election expenses * * * ." (Emphasis supplied.) MCLA 168.906; MSA 6.1906.

[5] The statute provides:

"No prosecution for any offense mentioned in this act [Michigan Election Law] * * * shall be maintained unless it shall be commenced within 1 year after the date of the registration, primary or election in connection with which the offense is alleged to have been committed." MCLA 168.942; MSA 6.1942.

Ryman filed his statement of election expenses on November 16, 1972. The formal complaint of the Tenure Commission is dated July 22, 1974.

"demonstrates a casual, even arrogant, indifference to the law, which renders him unfit for judicial office and, which conduct and attitude being known to the public, can only hold the courts in disrespect and impair the apparent integrity of judicial institutions and officers. As such, his conduct has been 'clearly prejudicial to the administration of justice.' "

As Ryman was not charged with false swearing, discipline may not properly be predicated on that account.

Ryman did not engage in the on-going practice of law after assuming his judicial duties.

The limitation on prosecution for violation of the Michigan Election Law had run before the filing of charges by the Tenure Commission.

While Ryman did not comply with the statutory requirements for appointment of a magistrate, we agree with the apparent judgment of the master and the Tenure Commission that no discipline should be imposed on that account.

The act of misconduct of which Ryman is guilty is essentially the same act of unprofessional conduct found by the State Bar Grievance Board, namely the backdating and improper signing of the deeds.

We agree with the Tenure Commission that this conduct, although it occurred before Ryman became a judge, is of a kind "clearly prejudicial to the administration of justice" and that disciplinary action is justified.

Such misconduct by a person who is or becomes a judge may engender disrespect for the entire judiciary. It matters not that the complained-of conduct occurred before assumption of judicial office or was otherwise unrelated to the perform-

ance of judicial duties. When a person known to have engaged in unprofessional conduct is allowed without reproach to exercise his judicial function, the integrity of the entire judiciary is put in question and its ability to perform impaired.

Backdating and improper signing of deeds was misconduct in the nature of corner-cutting by Ryman when he was a lawyer. Such conduct, while below the standards of the profession, does not demonstrate such "a casual, even arrogant, indifference to the law" as would render Ryman unfit to perform the duties of judicial office. It does not appear that Ryman did not recognize and properly discharge his judicial responsibility. The impairment of public confidence resulting from disclosure of Ryman's backdating and improper signing of the deeds, over a year before he became a judge, is not so pervasive as to require his removal from office. That sanction should ordinarily be reserved for conviction of a felony, misconduct in office or demonstrated inability to perform judicial duties.

We would decline the recommendation of the Tenure Commission and would impose in lieu of removal from office a suspension from office without pay for 15 months.

T. G. KAVANAGH, C. J., concurred with LEVIN, J.

SWAINSON, J., took no part in the decision of this case.